UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL DOUGLAS COOK, | ) | CIVIL ACTION NO. 4:21-CV-832 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,[1] | ) | |
| Defendant | ) | |

<u>MEMORANDUM OPINION</u>

I.    INTRODUCTION

Plaintiff Michael Douglas Cook, an adult individual who resides within the

Middle District of Pennsylvania, seeks judicial review of the final decision of the

Acting Commissioner of Social Security ("Commissioner") denying his

application for disability insurance benefits under Title II of the Social Security

Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C.

§ 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

II.     BACKGROUND & PROCEDURAL HISTORY

On October 28, 2019, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 12; Doc. 8-2, p. 13). In this application, Plaintiff alleged he became disabled as of December 15, 2018, when he was thirty-four years old, due to the following conditions: lower left extremity deep vein thrombosis; migraine headaches; sleep apnea with bilateral pulmonary embolism; PTSD; residual fracture/strain of the left ankle; bilateral pulmonary embolism; tinnitus; gastrointestinal problems; PTSD secondary to military sexual trauma and combat; schizophrenia since 1999; adjustment disorder since 2006; generalized anxiety disorder since 2008; bipolar I since 2019; and high blood pressure. (Admin. Tr. 299; Doc. 8-7, p. 39). Plaintiff alleges that the combination of these conditions affects his ability to: talk; remember/memorize; complete tasks; concentrate; understand; follow instructions; and get along with others. (Admin. Tr. 313; Doc. 8-7, p. 53). Plaintiff has at least a high school education. (Admin. Tr. 31; Doc. 8-2, p. 32). Before the onset of his impairments,

Plaintiff worked as an emergency medical technician and nurse assistant. (Admin. Tr. 30; Doc. 8-2, p. 31).

On June 29, 2020, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 12; Doc. 8-2, p. 13). On September 9, 2020, Plaintiff's application was denied on reconsideration. *Id.* On September 24, 2020, Plaintiff requested an administrative hearing. *Id.*

On December 3, 2020, Plaintiff, assisted by his counsel, appeared and testified by telephone during a hearing before Administrative Law Judge Randy Riley (the "ALJ"). *Id.* On December 16, 2020, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 32; Doc. 8-2, p. 33). On February 3, 2021, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 243; Doc. 8-5, p. 35).

On March 16, 2021, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1; Doc. 8-2, p. 2).

On May 7, 2021, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id*. As relief, Plaintiff requests that the Court enter an order awarding benefits. *Id*.

On July 8, 2021, the Commissioner filed an Answer. (Doc. 7). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. *Id*. Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 8).

Plaintiff's Brief (Doc. 11) and the Commissioner's Brief (Doc. 12) have been filed. Plaintiff did not file a Reply Brief. This matter is now ripe for decision.

## III.   STANDARDS OF REVIEW

### A. SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or

Page 4 of 32

fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B. STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP
SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged

_____

[2] Throughout this Memorandum Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on December 16, 2020.

in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

## IV.   DISCUSSION

Plaintiff raises the following issues in his statement of errors:

(1)   The ALJ erred and abused his discretion by failing to admit video evidence pertaining to Claimant's mental health episode;

(2)   The ALJ erred as a matter of law by failing to find Claimant's tremors and migraines as "severe" impairments;

(3)   The ALJ's residual functional capacity assessment is not supported by substantial evidence and the ALJ failed to comply with SSR 96-8p in assessing Claimant's residual functional capacity;

(4)     The ALJ erred by a filing to find Dr. Stephens' and Dr. Khalid's opinions as persuasive after evaluating and applying the factors listed in 20 C.F.R. 404.1520c;

(5)     The ALJ erred and abused his discretion by rejecting treating source opinions without adequate articulation; and

(6)     The ALJ erred by failing to focus on Claimant's ability to sustain competitive work activities.

(Doc. 11, p. 4).

A.     THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his December 2020 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through March 31, 2021. (Admin. Tr. 14; Doc. 8-2, p. 15). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between December 15, 2018 (Plaintiff's alleged onset date) and December 16, 2020 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 14; Doc. 8-2, p. 15). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: obesity; obstructive sleep apnea; PTSD; bipolar disorder; depression; anxiety disorder; and personality disorder. (Admin. Tr. 15; Doc. 8-2, p. 16). The ALJ also identified the following medically determinable non-severe impairments: essential tremor (affecting his hands); irritable bowel syndrome; hypertension; left

leg deep vein thrombosis and associated pulmonary embolism; tinnitus; and left ankle impairment. (Admin. Tr. 15-16; Doc. 8-2, pp. 16-17). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 16-20; Doc. 8-2, pp. 17-21).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in medium work as defined in 20 C.F.R. § 404.1567(c) except:

> He can occasionally climb ladders, ropes, and scaffolds. He must avoid exposure to excessive noise, excessive vibration, irritants, and hazards. Work is limited to simple, routine, repetitive tasks in a work environment free from fast-paced production involving only simple, work related decisions with few, if any, work place changes, no interaction with the public, occasional interaction with coworkers but no tandem tasks, and occasional supervision.

(Admin. Tr. 20; Doc. 8-2, p. 21).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 30; Doc. 8-2, p. 31). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 31-32; Doc. 8-2, p. 32-33). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing

and cited the following three (3) representative occupations: dining room attendant, DOT #311.677-018; kitchen helper DOT #318.687-010; and day worker DOT #301.687-014. (Admin. Tr. 31; Doc. 8-2, p. 32).

B.    WHETHER THE ALJ ERRED BY FAILING TO ADMIT VIDEO EVIDENCE PERTAINING TO PLAINTIFF'S MENTAL HEALTH EPISODE

Plaintiff attempted to admit video evidence of a mental health episode into evidence for the ALJ's review. (Doc. 11, p. 10). The ALJ declined to admit the video because it was duplicative, and Plaintiff contends that was a reversible error. (*Id.*). Plaintiff argues that the ALJ's finding on this matter was speculative, as he "did not permit factual testimony to be taken regarding the time/date/circumstances of the video evidence to determine if it was duplicative evidence." (*Id.*). Plaintiff contends that without this evidence, the ALJ failed to fully develop the record. (*Id.*).

The Commissioner counters that the ALJ's exclusion decision was not an abuse of discretion because Plaintiff's wife testified about what happened on the video. (Doc. 12, pp. 12-14). Regardless, the Commissioner argues that even if the ALJ erred in excluding the video, Plaintiff failed to carry his burden that the ALJ's error was prejudicial. (*Id.* at p. 14). On this point, I agree with the Commissioner.

On October 29, 2020, Plaintiff's counsel wrote to the ALJ stating that he was unable to upload video evidence to Social Security's electronic filing portal.

(Admin. Tr. 377; Doc. 8-8, p. 10). The letter was accompanied with a disc that contained the video Plaintiff wanted admitted into the record. (*Id.*). At the administrative hearing, Plaintiff's counsel raised the video issue again with the ALJ. (Admin. Tr. 73-74; Doc. 8-2, pp. 74-75). The ALJ explained that he did not receive the video, and he was not sure if admitting video evidence was "part of our technological capabilities of doing." (*Id.*). However, the ALJ stated he would "double check" after the hearing if their policies and procedures allow video submissions. (*Id.*). But at the time of hearing, he declined to admit the video. (*Id.*).

Later in the hearing, the following exchange occurred between Plaintiff's counsel and Plaintiff's wife:

> Q: Now regarding – we sent, we sent in the – you sent me video evidence. I sent it into the Judge. But just in the event that it can't come in, can you explain the type of behavior that Michael engages in so the Judge can have an idea of what happens when he enters into an episode?
>
> A: He, his face was red, bright red. His whole body was tense. He was hitting himself in the face, yelling at me. I don't remember the exact words he was yelling, but it depends on, you know, whatever's bothering him at the moment. It's like stop this or, or leave me alone, or, or whatever it is that pertains to a situation. But he was punching himself in the face, yelling, crying. I've seen him do it in public as well. In this instance on video, we were at home and he was actually relaxing on the couch. And he just got – I asked him a simple question, a totally benign question and then – I don't remember exactly what the question was before the video, but he – it's just something in him triggered, and that's what started the episode. And that happens, that happens a lot.

(Admin. Tr. 78-79; Doc. 8-2, pp. 79-80).

The ALJ then decided to not admit the video evidence because "testimony regarding the episode was provided and is documented in the claimant's medical records and, therefore, the video evidence is duplicative." (Admin. Tr. 12; Doc. 8-2, p. 13).

Social Security hearings are non-adversarial and as such, the ALJ has a duty to investigate all matters at issue and seek all relevant facts. *Schmidt v. Colvin*, No. 13-539, 2013 U.S. Dist. LEXIS 183434, at *31-34 (W.D. Pa.  Dec. 23, 2013). Courts apply the abuse of discretion standard in deciding whether the ALJ erred in excluding evidence. *Brown v. Comm'r of Soc. Sec.*, No. 00-3067, 2000 U.S. App. LEXIS 30789, at * 7 (6th Cir. Nov. 30, 2000); *Miller v. Barnhart*, No. 01-cv-0052, 2002 WL 32348504, at *14 (E.D. Pa. Jan. 31, 2002).

As applied here, the ALJ did not err in declining to admit the video into evidence. First, as noted by the Commissioner, Plaintiff does not argue that there is "audio or visual evidence on the video that he or his wife were unable to describe to the ALJ or Plaintiff's psychologist." (Doc. 12, p. 14). Plaintiff's wife described at length the mental health episode that the video purports to depict. And indeed, the ALJ considered Plaintiff's mental health episodes in his opinion. (Admin. Tr. 22; Doc. 8-2, p. 23). Second, Plaintiff has not shown how the failure to admit the video prejudiced him. It is Plaintiff's burden to show that the ALJ erred in his

decision. *Dickson v. Berryhill*, No. 17-cv-1586, 2018 WL 2461761, at *12 (M.D. Pa. June 1, 2018) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). Therefore, there is no reversible error on this point.

C.   WHETHER THE ALJ ERRED BY CONCLUDING THAT PLAINTIFF'S TREMORS AND MIGRAINES WERE NON-SEVERE

Plaintiff argues that the ALJ erred when he failed to find Plaintiff's tremors and migraines as severe impairments. (Doc. 11, pp. 11-12). Plaintiff contends that his medical records clearly establish that he has tremors and migraines, but that the ALJ declined to identify tremors as non-severe and omitted any discussion of migraines at step 2. (*Id.*). The Commissioner counters that, at most, this is harmless error because the ALJ considered Plaintiff's tremors and migraines in crafting the RFC. (Doc. 12, pp. 17-18). I agree with the Commissioner; there is no reversible error on this point.

At step two of the sequential evaluation process, the ALJ considers whether a claimant's impairment is (1) medically determinable or non-medically determinable, and (2) severe or non-severe; this step is essentially a threshold test. 20 C.F.R. § 404.1520(a)(4)(ii); SSR 85-28, 1985 WL 56856.  An impairment, or combination of impairments, is not severe if it does not significantly limit a claimant's ability to do basic work activities.  20 C.F.R. § 404.1522(a); 20 C.F.R. § 416.922(a); *see also* 20 C.F.R. § 404.1522(b) (defining basic work activities); 20

C.F.R. § 416.922 (same). Conversely, an impairment is "severe" if it *does* significantly limit a claimant's physical or mental ability to do basic work activities. The phrase, "significantly limits," however is not synonymous with "disability." Rather, the ALJ's analysis at step two is a threshold test designed to screen out *de minimis* claims.

Under the Commissioner's regulations, *all* impairments, both severe and non-severe, must be accounted for in an ALJ's RFC assessment. 20 C.F.R. § 404.1545. Therefore, in cases where the ALJ found at least one impairment is found medically determinable and severe, an ALJ's unsupported conclusion that one or more other impairments are medically determinable but "non-severe" may be viewed as harmless error unless it appears that the ALJ's error influenced his or her RFC assessment. As explained in *McClease v. Comm'r of Soc. Sec.*,

> [E]ven if an ALJ erroneously determines at step two that one impairment is not "severe," the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five.  However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration.  *See Nosse v. Astrue*, No. 08-[CV-1173, 2009 WL 2986612, *10] (W.D. Pa. Sept. 17, 2009).

No. 08-CV-1673, 2009 WL 3497775, *10 (E.D. Pa. Oct. 28, 2009); *see also Salles v. Comm. of Soc. Sec.*, 229 F. App'x. 140, 145, n.2 (3d Cir. 2007) ("Because the

ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her impairments were non-severe, any error was harmless.").

As applied here, the ALJ assessed Plaintiff's tremors and migraines at step 2, thus making this a harmless error, if any. When crafting the RFC, the ALJ noted Plaintiff's claims that he "experiences fifteen migraines a month and is unable to do anything during the day with some of them. He is barely able to leave his house and cannot imagine doing anything while experiencing a migraine." (Admin. Tr. 21; Doc. 8-2, p. 22). The ALJ also examined Plaintiff's medical records, and noted that:

> the claimant's medical records do not indicate the claimant consistently reported experiencing migraine headaches or persistently sought treatment for his migraine headaches (Exhibits 1F – 13F). Furthermore, the claimant's medical records indicated that he reported experiencing only two to three migraines a month (Exhibit 7F). Additionally, while the claimant has utilized prescribed medication for his migraine headaches (Exhibit 4F), the claimant's medical records do not indicate that he has required any ongoing treatment with a neurologist or required treatment at a specialty clinic for headache disorders (Exhibits 1F – 13F).

> (Admin. Tr. 23; Doc. 8-2, p. 24).

The ALJ addresses at length Plaintiff's migraine when crafting the RFC. Indeed, Plaintiff concedes that "in analyzing steps 3,4, and 5, the ALJ recognized that Claimant's medical records reflected that Claimant was experiencing migraines multiple times a month . . . ." (Doc. 11, p. 12). Therefore, because the

ALJ addressed Plaintiff's migraines at the subsequent steps, his failure to address it at step 2 is, at most, harmless error.

Likewise, with respect to Plaintiff's tremor, the ALJ addresses it in crafting the RFC. The ALJ notes that Plaintiff complains of a tremor, (Admin. Tr. 20-21; Doc. 8-2, pp. 21-22) and discusses his tremor when he analyzed the medical opinion evidence in the record. (Admin. Tr. 27-28; Doc. 8-2, p. 28-29). As such, there is no reversible error on this point.

D.   WHETHER THE ALJ IMPROPERLY EXCLUDED CREDIBLY ESTABLISHED LIMITATIONS FROM THE RFC ASSESSMENT

Plaintiff contends the ALJ's RFC is not supported by substantial evidence because the ALJ: (1) failed to include the word "short" in a "short and simple tasks" limitation, (2) failed to consider a limitation that addresses Plaintiff's violent or combative behavior due to his bipolar disorder, and (3) failed to include a manipulative limitation due to Plaintiff's hand tremor. I'll discuss each in turn.

1.   Limitation to Short and Simple Tasks

The ALJ adopted a limitation that Plaintiff be limited to work involving "simple, routine, repetitive tasks." (Admin. Tr. 20; Doc. 8-2, p. 21). However, Plaintiff believes the ALJ erred because he failed to include the term "short" in the aforementioned limitation. (Doc. 11, pp. 14-15). Plaintiff contends that omitting "short" from that limitation is inconsistent with the opinions from state agency

consultants, whom the ALJ found persuasive. (*Id.*). Plaintiff believes this omission would have affected "the jobs, if any, provided by the VE at step 5." (*Id.*). The Commissioner argues that the state agency consultant wrote on the Disability Determination Worksheet at one spot that "he is able to make simple decisions and follow short simple directions and make short simple decisions," but ultimately, the consultant opined at the end of the report that Plaintiff can "perform simple, routine, repetitive tasks . . . ." (Doc. 12, p. 22) (citing Admin. Tr. 141-42; Doc. 8-3, pp. 44-45).

However, without further explanation, I believe there is no difference between a "short task" and a "short and simple task." To the Court, they reflect the same limitation, and as such, there is no error on this point. *See John   B. v. Kijakazi*, No. 19-cv-16558, 2021 WL 3630307, at * 32-33 (D.N.J. Aug. 17, 2021) ("Moreover, to the extent that Plaintiff complains that the ALJ erred by referring to only 'simple instructions' instead of 'very short and simple instructions' in the RFC, R. 196, he has not persuaded this Court that any such error is anything other than a harmless oversight."); *Caroline C.L. v. Kijakazi*, No. 8:20-cv-2229, 2022 U.S. Dist. LEXIS 52841, at * 11-12 (C.D. Cal. Mar. 23, 2022) ("As such, the Court does not find the ALJ's omission of the term 'short' from the phrase 'short, simple instructions' to be error because the change is minimal and the phrases 'simple

instructions' and 'short, simple instructions' reflect the same limitation."). Thus, there is no reversible error on this point.

### 2. Limitations Due to Bipolar Disorder

Plaintiff contends that the ALJ failed to properly account for the "anxious, off-task, [] irritable . . . [and] combative and violent" behaviors when he cycles through his bipolar disorder. (Doc. 11, pp. 15-16). He asserts that this type of behavior would preclude him from any job. (*Id.*). The Commissioner retorts that the ALJ considered these allegations, but objective evidence countered Plaintiff's complaints. (Doc. 12, pp. 22-24). Thus, the Commissioner contends that the ALJ did not err. On this issue, I agree with the Commissioner.

In his testimony, Plaintiff described his hyper-manic phases. During these phases, he would, among other things, explode in anger, say hurtful things to others, and would lose control of himself. (Admin. Tr. 21; Doc. 8-2, p. 22). Plaintiff's wife corroborated his testimony. (Admin. Tr. 22; Doc. 8-2, p. 23). However, the ALJ noted that Plaintiff's alleged mental health symptoms are not consistent with the objective medical evidence in the record. The ALJ noted that:

> Specifically, the claimant's medical records indicate the claimant was assessed with clinical examination findings of calm psychomotor activity, good eye contact, clear speech, a coherent thought process, a good mood a pleasant mood, a bright affect, a good mood, a bright affect, normal speech, a euthymic mood(Exhibits 1F, 5F, 6F, 9F, and 13F). Additionally, the claimant was repeatedly noted

to be cooperative and was described as pleasant and polite (Exhibits 1F, 4F, 5F, 6F, 10F, and 13F).

The claimant's medical record also contain multiple notations that are not consistent with the claimant's allegations regarding his symptoms and limitations pertaining to his mental impairments. For example, during March 2019, he reported that he feels great, is doing more activity during the day, had had significantly reduced anger outbursts, and is in a much better mood (Exhibit 2F). During April 2019, he reported improvement in his motivation and some improvement in his anger management (Exhibit 4F). During September 2019, he reported anger management helps him with coping strategies (Exhibit 13F). During November 2019, he reported feeling better (Exhibit 4F). During December 2019, he reported feeling much better (Exhibit 4F). During May 2020, the clamant reported feeling "good" (Exhibit 6F). During September 2020, he reported doing well overall (Exhibit 10F). Moreover, although the claimant testified that no longer goes to a pond, Lowe's, or Barnes and Noble (Testimony of Michael Douglas Cook), the claimant's medical records from September 29, 2020 indicates that he does go to a pond, Lowe's, or Barnes and Noble (Exhibit 10F).

The claimant's medical records do indicate the claimant has received mental health therapy treatment, has participated in anger management classes, and has utilized prescribed psychotropic medication (Exhibits 1F, 5F, 6F, 10F, and 13F). However, the claimant has not received any inpatient treatment for symptoms related to his mental impairments since his alleged onset date of disability (Exhibit 13F). Furthermore, the evidence discussed in the two immediately preceding paragraphs indicate the claimant's treatment measures for his mental impairments are effective in limiting his symptoms related to his mental impairments and that he does not experience symptoms related to his mental impairments with the frequency, intensity, and persistence that he has suggested.

The claimant has alleged experiencing significant limitations in his activities of daily living, including his assertion that he does not do any vacuuming, sweeping, or take out the trash or do laundry (Exhibits 3E, 10E and Testimony of Michael Douglas Cook).

> However, the entirety of the claimant's medical records on a longitudinal basis, including the documented normal clinical examination findings pertaining to his physical and mental impairments, is not consistent with the claimant experiencing limitations in his activities of daily living to the extent he has alleged. Furthermore, the claimant's medical records indicate the claimant is able to complete activities of daily living independently (Exhibit 1F).

(Admin. Tr. 23-24; Doc. 8-2, pp. 24-25).

Plaintiff believes that the ALJ cherry-picked only the adverse evidence in coming to his conclusion, but I disagree. Upon review of the record, the ALJ's decision to not include any more limitations on Plaintiff's bipolar disorder is supported by substantial evidence. Providers noted that Plaintiff's mood was stable, (Admin. Tr. 952; Doc. 8-16, p. 21); (Admin. Tr. 961; Doc. 8-16, p. 30); (Admin. Tr. 503; Doc. 8-10, p. 43), had euthymic or bright moods, and a bright affect. (Admin. Tr. 397; Doc. 8-9, p. 10), (Admin. Tr. 402-03; Doc. 8-9, pp. 15-16); (Admin. Tr. 407; Doc. 8-9, p. 20). In visits with providers in early 2020, they noted that Plaintiff "continues to present as much less tangential with little evidence of delusional ideation, as compared to earlier meetings. He reports maintenance of previously noted improvement in his symptoms, with a total absence of interpersonal violence between he and his wife." (Admin. Tr. 599-600; Doc. 8-11, pp. 21-22). *See also* (Admin. Tr. 596; Doc. 8-11, p. 18) (near identical assessment of Plaintiff's condition); (Admin. Tr. 593; Doc. 8-11, p. 15) (same).

I acknowledge that there is medical evidence in the record that support's Plaintiff claims. However, it is not so overwhelming as to allow me to reweigh evidence. *See e.g., Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (explaining that evidence is not substantial "if it is overwhelmed by other evidence."). Thus, there is no reversible error on this point.

3.    Manipulative Limitations Due to Tremor

Plaintiff contends that the ALJ erred when he failed to incorporate in the RFC state consultative examiner Karena Hammons' opinion on Plaintiff's hand tremor. (Doc. 11, pp. 17-18). The alleged error occurred when the ALJ dismissed Ms. Hammons' hand tremors opinion because her exam noted Plaintiff's intact hand and finger dexterity and 5/5 grip strength. (*Id.*). Plaintiff believes that there is no connection between tremor and intact dexterity and full grip strength. (*Id.*). The Commissioner responds by arguing that the ALJ correctly rejected Ms. Hammon's opinion, and that her opinion was an outlier compared to the two other medical opinions. (Doc. 12, pp. 25-26). On this point, I agree with the Commissioner.

Plaintiff underwent a consultative examination by Karena Hammon, NP on July 11, 2019. (Admin. Tr. 443; Doc. 8-9, p. 56). Ms. Hammon noted that Plaintiff had "Hand and finger dexterity intact. Noted bilateral hand tremors were present. Grip strength 5/5 bilaterally." (Admin. Tr. 446; Doc. 8-9, p. 59). Thus, Ms.

Hammon opined that Plaintiff could only occasionally finger because of his hand tremors. (Admin. Tr. 451; Doc. 8-9, p. 64).

The ALJ found this portion of Ms. Hammon's opinion not persuasive. (Admin. Tr. 27; Doc. 8-2, p. 28). The ALJ reasoned that the fingering limitation was not supported by Ms. Hammon's objective findings including the 5/5 grip strength and intact hand and finger dexterity. (*Id.*).

Upon review, the ALJ did not err in finding Ms. Hammon's opinion not persuasive. The ALJ was right to conclude her opinion is not consistent with her own findings of intact strength and dexterity. Plaintiff complains that the ALJ erred in making the logical leap between strength and dexterity and a fingering limitation. I reject that argument. While hand strength and/or hand dexterity may not be related to fingering, finger dexterity is related to one's ability to "finger."[3] And, to any extent there is an appreciable difference between one's ability to finger, and one's finger dexterity, Plaintiff has not described it. Thus, the ALJ's findings on this are supported by substantial evidence.

---

[3] "Fingering" is defined as "[p]icking, pinching, or otherwise working primarily with fingers rather than with the whole hand or arm as in handling." Appendix C. Physical Demands, SCODICOT Appendix C. "[F]inger dexterity refers to ability at manipulating things with one's fingers." *Jamila S. A. J. v. Berryhill*, No. 5:16-cv-02032, 2018 WL 3062147, at *42 (C.D. Cal. June 19, 2018). I fail to understand what the difference between the two is, and how finger dexterity is unrelated to fingering.

Page 23 of 32

E.     WHETHER THE ALJ'S EVALUATION OF MEDICAL OPINIONS BY DR. STEPHENS AND DR. KHALID IS CONSISTENT WITH 20 C.F.R. § 404.1520C

Plaintiff attacks the ALJ's treatment of Drs. Stephens' and Khalid's medical opinion. Plaintiff argues that the ALJ erred when he failed to discuss all the factors articulated in 20 C.F.R. § 404.1520c when considering the persuasiveness of the medical opinions. (Doc. 11, pp. 18-19). Plaintiff also contends that the ALJ erred in discounting the doctors' opinions because evidence exists in the record that supports their opinions. (*Id.* at pp. 19-21).

The Commissioner counters that the ALJ was not required to discuss all the factors articulated in Section 404.1520c. (Doc. 12, pp. 21-22). Additionally, she counters that the ALJ's decision to find the doctors' opinion as not persuasive is based on substantial evidence and is supported by the record. (Doc. 12, pp. 19-21). I agree with the Commissioner. Here, I'll explain why the ALJ did not have to discuss all of the Section 404.1520c factors and why the ALJ's decisions on Dr. Stephens' and Dr. Khalid's opinions are supported by substantial evidence.

1.     Whether the ALJ Must Discuss all Section 404.1520c Factors

An ALJ's consideration of competing medical opinions and prior administrative medical findings is guided by the following factors: the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source (supportability); the

extent to which the medical source's opinion is consistent with the record as a whole (consistency); length of the treatment relationship between the claimant and the medical source; the frequency of examination; the purpose of the treatment relationship; the extent of the treatment relationship; the examining relationship; the specialization of the medical source and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c).

The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2). The ALJ will explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. The ALJ may, but is not required to, explain his or her consideration of the other factors unless there are two equally persuasive medical opinions about the same issue that are not exactly the same. 20 C.F.R. § 404.1520c(b)(3).

Here, Plaintiff's assertion that the ALJ erred in not discussing all the Section 404.1520c factors is contrary to the text of that regulation. Section 404.1520c only requires an ALJ to discuss the other factors if two or more medical opinions are equally persuasive upon consideration of supportability and consistency. Here, the ALJ did not find two opinions equally persuasive; therefore, the ALJ was not

required to discuss or consider any other factors besides consistency and supportability.[4]

>    2.    Dr. Stephens' Opinion

Dr. Stephens provided two opinions on Plaintiff's functional limitations, one dated July 15, 2020 and another dated October 19, 2020. The Parties do not dispute the ALJ's summary of the opinion, so it is reproduced here:

> Robert Stephens, M.D., completed an opinion on July 15, 2020 that indicates the claimant has mild, moderate, and marked limitations regarding understanding, remembering, and applying information; marked and extreme limitations regarding interacting with others; mild, moderate, and marked limitations regarding sustained concentration, persistence, or pace; and mild, moderate, marked, and extreme limitations pertaining to adapting and managing oneself; the claimant's impairment would make it difficult for him to work in any capacity; the claimant's impairment substantially interferes with his ability to work on a regular and sustained basis at least twenty percent of the time; and the claimant cannot work on a regular and sustained basis in light of his mental impairment or treatment related thereto (Exhibit 8F).

> (Admin. Tr. 28; Doc. 8-2, p. 29).

The ALJ found Dr. Stephens' opinion to be not persuasive. (*Id.*). His reasoning is as follows:

> However, Dr. Stephens' opinion is not consistent with documented clinical examination findings of calm psychomotor activity, good eye

---

[4] Plaintiff repeatedly points out that Drs. Stephens and Khalid are Plaintiff's long standing treating providers. However, the ALJ was not required to consider the nature or extent of that relationship when analyzing Drs. Stephens and Khalid's opinions.

contact, clear speech, a coherent thought process, a good mood a pleasant mood, a bright affect, a good mood, a bright affect, normal speech, and a euthymic mood; notations indicating the claimant was repeatedly noted to be cooperative and was described as pleasant and polite; and notations that indicate the claimant reported that he feels great, is doing more activity during the day, had had significantly reduced anger outbursts, is in a much better mood, has had improvement in his motivation and some improvement in his anger management; anger management helps with coping strategies, and he reported feeling better, much better, and "good". Thus, the undersigned does not find the opinion of Dr. Stephens persuasive.

(*Id.*).

Dr. Stephens' second opinion is very similar to his first opinion. The ALJ found the second Dr. Stephens opinion as unpersuasive for the exact same reasons he found the first opinion unpersuasive. (*Id.*).

It was appropriate for the ALJ to find that Dr. Stephens' opinion was not supported or consistent with the record. Plaintiff essentially asking the Court to reweigh evidence, as his treatment notes show serious impairments. First, to any extent Plaintiff is asking the Court to reweigh the evidence *de novo*, it will not. A federal court is limited to deciding whether substantial evidence support's the ALJ's findings. *Torres v. Barnhart*, 139 F. App'x 411, 413 (3d Cir. 2005).

Keeping that standard in mind, substantial evidence supports the ALJ's decision to find that Dr. Stephens' opinion was not persuasive. As the ALJ described, providers routinely noted that his mental status exams were generally normal. Additionally, providers noted that: Plaintiff's mood was stable, (Admin.

Tr. 952; Doc. 8-16, p. 21); (Admin. Tr. 961; Doc. 8-16, p. 30); (Admin. Tr. 503; Doc. 8-10, p. 43), had euthymic or bright moods, and a bright affect. (Admin. Tr. 397; Doc. 8-9, p. 10), (Admin. Tr. 402-03; Doc. 8-9, pp. 15-16); (Admin. Tr. 407; Doc. 8-9, p. 20). In visits with providers in early 2020, they noted that Plaintiff "continues to present as much less tangential with little evidence of delusional ideation, as compared to earlier meetings. He reports maintenance of previously noted improvement in his symptoms, with a total absence of interpersonal violence between he and his wife." (Admin. Tr. 599-600; Doc. 8-11, pp. 21-22). *See also* (Admin. Tr. 596; Doc. 8-11, p. 18) (near identical assessment of Plaintiff's condition); (Admin. Tr. 593; Doc. 8-11, p. 15) (same).

While I acknowledge Plaintiff's concerns that favorable evidence exists in the record, that is not enough for the Court to overrule the ALJ's decision. The ALJ considered the record as a whole (with extensive and specific citations), even if there "is contrary evidence that would justify the opposition conclusion, as long as the substantial evidence standard is satisfied," this Court will uphold the Commissioner's decision. *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (internal citations omitted).

4.     Dr. Khalid's Opinion

Likewise, Dr. Khalid provided two medical opinions on Plaintiff's limitations, one dated July 14, 2020 and another dated October 19, 2020. The ALJ summarized Dr. Khalid's opinion as follows:

> Muhammad T. Khalid, M.D., completed an opinion on July 14, 2020 that indicates the claimant has mild and moderate limitations regarding understanding, remembering, and applying information; mild and moderate limitations regarding interacting with others; mild and moderate limitations regarding sustained concentration, persistence, or pace; and mild and moderate limitations pertaining to adapting and managing oneself; the claimant impairment substantially interferes with his ability to work on a regular and sustained basis at least twenty percent of the time; would miss work three to four days a month because of his mental impairment or treatment related thereto; and cannot work on a regular and sustained basis in light of his mental impairment (Exhibit 13F).

(Admin. Tr. 29; Doc. 8-2, p. 30).

In his second opinion, Dr. Khalid found that Plaintiff had more severe limitations:

> Muhammad T. Khalid, M.D., completed an opinion on October 19, 2020 that indicates the claimant has moderate and marked limitations regarding understanding, remembering, and applying information; moderate and marked limitation regarding interacting with others; moderate, marked, and extreme limitations regarding sustained concentration, persistence, or pace; and moderate and marked limitations pertaining to adapting and managing oneself; the claimant's impairment substantially interferes with his ability to work on a regular and sustained basis at least twenty percent of the time; and cannot work on a regular and sustained basis in light of his mental impairment; and the claimant' symptoms would make it difficult for him to work in any capacity (Exhibit12F).

(*Id.*).

The ALJ rejected both opinions for the same reason:

Dr. Khalid did provide explanatory comments to support the opinion.

However, Dr. Khalid's' opinion is not consistent with documented clinical examination findings of calm psychomotor activity, good eye contact, clear speech, a coherent thought process, a good mood a pleasant mood, a bright affect, a good mood, a bright affect, normal speech, and a euthymic mood; notations indicating the claimant was repeatedly noted to be cooperative and was described as pleasant and polite; and notations that indicate the claimant reported that he feels great, is doing more activity during the day, had had significantly reduced anger outbursts, is in a much better mood, has had improvement in his motivation and some improvement in his anger management; anger management helps with coping strategies, and he reported feeling better, much better, and "good". Thus, the undersigned does not find the opinion of Dr. Khalid persuasive.

(*Id.*).

Upon review of the record, substantial evidence supports the ALJ's decision to consider Dr. Khalid's opinion as unpersuasive. Similar to my analysis in the preceding section, the record contains numerous instances that documented Plaintiff's generally normal mood, and stable symptoms. And because the ALJ considered the record as a whole (with extensive and specific citations), even if there "is contrary evidence that would justify the opposition conclusion, as long as the substantial evidence standard is satisfied," this Court must uphold the

Commissioner's decision. *Johnson*, 497 F. App'x at 201 (3d Cir. 2012) (internal citations omitted).

      F.    WHETHER THE ALJ FAILED TO FOCUS ON PLAINTIFF'S ABILITY TO SUSTAIN COMPETITIVE WORK ACTIVITIES

Plaintiff's last alleged error is a global one, stating:

> For the reasons set forth in this Brief and based upon the objective medical evidence as a whole, the record clearly reflects that Claimant would be limited in sustaining competitive work activities given his impairments. The ALJ erred by failing to focus on this fact despite the ALJ recognizing that Claimant has objective findings which are consistent with and support Claimant's physical and mental health impairments.

(Doc. 11, p. 22).

Given that I found no reversible error on any other issue raised, I reject this last argument.

[The next page contains the Conclusion]

V.      CONCLUSION

Accordingly, I find that Plaintiff's request for an order directing a benefits award will be denied as follows:

(1) The final decision of the Commissioner will be AFFIRMED.

(2) Final judgment will be issued in favor of KILOLO KIJAKAZI.

(3) An appropriate Order will issue.

Date: September 6, 2022                    BY THE COURT

                                           *s/William I. Arbuckle*
                                           William I. Arbuckle
                                           U.S. Magistrate Judge